This is a case on the docket, proceeding today, 7-C-0-9-3-B. People of the state of Illinois, plaintiff, Anthony B. Morgan, defendant, defendant. On behalf of the defendant, defendant, Mr. Christopher N. McCoy. On behalf of the plaintiff, appellee, Mr. David A. Burnham. Mr. McCoy, you may proceed. May it please the court. Counsel. My name is Christopher McCoy from the Office of the State Appellate Defender, and I represent Mr. Kenan Morgan. Your Honors, this case feels a little bit like deja vu because we are making the same argument that we raised the first time this case was on appeal. Obviously, in the first appeal, this court held that the trial judge failed to conduct an adequate crankle inquiry because it stopped its inquiry too soon. And the same thing happened here on remand. At the original crankle hearing, isn't it true that the judge asked the defendant open-ended questions? And he said specifically, what did your attorney not do? Before the remand? Yes. Yes. Yes. I believe he asked what's her motion, you disagree with her, and then anything specific she didn't do for you. Mr. McCoy, in your original brief, you did not include the exchange between defense counsel and the defendant after the state set out the history of the plea negotiations, correct? In the opening brief on this case, the fact that they In both opening briefs, in Morgan 1 and Morgan 2, you neglected to include that the trial court asked defense counsel, is that your understanding, Ms. Hatch? And she said, yes, it is. He then asked the defendant, Mr. Morgan, is that your understanding? And the defendant said, yes, it is. That is true. Why didn't you put that in your brief? I apologize to this court. I felt that the important portion of that was the state's proffer. And yes, I That is directly relevant to your assertion that there's nothing in the record to refute the defendant's claims. Doesn't that contradict your assertion in your brief that there's nothing in the record to contradict the defendant's claim that there was a two-year offer? Well, we Does it refute that? No, it doesn't. First, just to take one step back before directly answering your question, we're not denying the state said this. Now, does it directly refute the defendant's claims? No, it does not. First of all, the trial judge did not rely on his proffer when he made his findings. He never said he was making any credibility determinations, any factual determinations. He never mentioned any of the 402 conferences. What the judge said was this was attorney strategy, and that was the basis for the trial judge's decision. Obviously, this does not fall in the realm of attorney strategy. Did Ms. Hatch aggressively pursue plea negotiations? Does the record reflect that she aggressively pursued plea negotiations? We don't know. We do know from the record that the case was continued at least twice so the defendant could call his mother to talk about the offers, correct? Absolutely. But what is important here The case was continued several times for the defendant to consider offers made by the state, correct? Absolutely, and that could be completely true, and Mr. Morgan's claims could still be completely true. Would you agree that a reviewing court and a trial court just as a trial court can dismiss allegations of ineffective assistance of counsel when the original trial proceedings contradicts the defendant's allegations? Could you ask that again one more time? Would you agree that it's appropriate for both a trial court and a reviewing court to dismiss a defendant's claims when the original trial proceedings contradicts the defendant's allegations? Yes, yes. In People v. Rogers, the defendant alleged that he had turned down a 12-year offer and got a 40-year sentence because he was never quote-unquote properly admonished on how the indictments could be calculated. The Supreme Court said there was a record that refuted that claim. Here, you have a defendant saying it was an offer of two years, and you have a record that refutes that claim, correct? No, no. Where in the record is there any reference to a two-year offer? There is not a reference to a two-year offer. There is on November 24, 2014, which is the date of the arraignment, the prosecutor said he had made an offer. This was before either of the 402 conferences, and never in the record is it stated what that offer was. So that is possible that that was a two-year offer. Obviously, the state's offers were going three years, four years, five years. Maybe the state initially offered two years the day of arraignment to get the case over with. Another possibility is when Mr. Morgan said two years, what he was really meaning to say was four years at 50%. Where is it? Mr. Morgan spent to the penitentiary before. He's a multiple convicted felon. Where is that in the record anywhere? Well, Mr. Morgan has an IQ of 77, which is in the 6th percentile, so he can't be expected to— The lower 6th? The lower 6th percentile, yes, to completely and fully articulate his claims and state them in proper legal terminology. What's important to the defendant is how much time do I do in prison? When someone says four years at 50%, the defendant's mind could say two years. That's your interpretation. The problem is we don't know. And it could have been resolved if the judge had held an adequate Krankel inquiry either the first time or the second time. What does Krankel require? Krankel requires an inquiry into the specifics of the defendant's claim. And the judge asked the defendant specifically, he used the word specifically, Mr. Morgan, what is your complaint, correct? Are you talking on the first? Both. Well, the first, if I may, the first Krankel inquiry, that's already been decided by this court to be inadequate. That's the law of the case at this point. At the second inquiry, all we have are these two yes or no questions to defense counsel. With respect to the law of the case, would you agree that we do not have to follow the law of the case if our original decision was politically erroneous because you did not include in your brief, and this court was not aware of and did not mention in our disposition, the exchange between the court, defense counsel, and the defendant. And the state relied upon your representations in your brief that there was nothing in the record to refute the defendant's claims. The, I don't, I disagree that the state is relying on my representations. We included the state's proffer in our brief. The state, on the first appeal, argued that the case was meritless. This case, this court decided that remand was required. Now, whether or not, I think, setting that aside, this proffer still does not refute the defendant's claim. What's important in Mr. Morgan's claim is what was said between the defendant and defense counsel. What about what's said between the defendant and the court in all of those proceedings, including the day when the four-year offer that you're talking about was made after a 402 conference where the judge talked the state into reducing it from five years to four years. That, you know, you know what I'm talking about, February 17th? And they come back out, and the judge has an exchange with the defendant and tells the defendant, you're going to be facing three to 14, the defendant understands. And he asks the defendant, do you want to accept or reject this offer knowing that? And he says, I want to reject it. That, you're saying that that does not refute the notion that the defendant was holding out for a two-year offer or an offer of probation when the state says, judge, there will be no more offers? That doesn't refute the defendant's claims? I'm not disputing any of the facts you said. What is important here is... Tell me, ask this question. You're saying that does not refute the defendant's claims? That does not refute the defendant's claims. The defendant's claims are based on what trial counsel told him, which is outside the presence of the court, which is outside the presence of the state's attorney. The state's attorney is making a proffer. He doesn't know what privileged communication occurred between defense counsel and the defendant. Let's get to prejudice. What possible relief could this court grant or the trial court? What potential relief is there? Well, to get a reduced sentence. The state, how can we order the state to offer something that was never offered? There's no, again, we don't know what the original offer was. We don't know, and Mr. Morgan... We did know from the record what the state said. The defendant confirmed and the defense counsel confirmed. Those were the offers. They said those were the offers at the 402 conference. We don't know what the offer was on the date of arraignment. Doesn't Laffler and Fry both say the obligation of the defense counsel is to extend all formal offers? That's true, and it's what is... But what was said when she was conveying those offers? Did she tell the defense... We don't even know from defense counsel, did Mr. Morgan say, I wanted to accept this offer?  What relief could possibly be granted? At one point in the fitness evaluation, Mr. Morgan said he'd like to take the four-year offer. So that was offered. A three-year offer was offered. If something happened that prevented Mr. Morgan... For all we know, again, he was referring to the four-year offer. He's told on the record the state says we're revoking all offers. At that time, at that time, what possible relief could we get? As Justice Ginsburg said in her special concurrence in Burke v. Tidwell, if the state revokes the offer, there's no possible relief. There's nothing on the table. They revoked the offer. How could we possibly order the state to convey something that was informally discussed with his lawyer? I mean, these were definitive offers on the table. And if it's in effect, if the deficient performance of counsel caused Mr. Morgan to not take these offers, the prejudice is he went to trial and got a higher sentence than what you would have otherwise received if you had gotten ineffective assistance. On the record, when that four-year offer is still on the table, the defendant is told this is your opportunity. He knows this is his opportunity to accept or reject that offer. Correct? We don't know what defense counsel told him. We know what the court is telling the defendant. We know what the state is telling the defendant. You're saying that he has no obligation whatsoever to then report to the court judge, I'd like to take that offer, but I thought I could get probation. You're saying that there's no obligation on the defendant to ever speak up? He did speak up. He spoke up in the fitness evaluation. He spoke up when he made his motion for ineffective assistance. He spoke up on remands. He's stated his claim time and time again. The problem is we are operating in this void of facts, this speculation. This all could have been avoided. It is speculation, and the trial court asked the defendant several times, specifically, Mr. Morgan, what is your complaint? Then the trial court needs to ask the attorney, when this court specifically sends this case back to do a factual inquiry, the trial judge needs to do that inquiry. He needs to do more than ask these prefunctory questions that tell him nothing about what happened during plea negotiations. In the crankle inquiry, does the presumption of effectiveness apply? A presumption that the attorney provided effective assistance of counsel, does that apply? Well, you can't just assume that counsel wasn't. In looking at what takes place in front of the trial court, does the presumption of effectiveness play any role in a judge's evaluation of a defendant's claims? It could in certain circumstances, I think. But the fact is the judge needs to know the facts behind it in order to make any kind of assumption or presumption on effectiveness. Well, the judge did ask the defendant questions, specifically, what are your complaints, Mr. Morgan? And he answered those. He stated his complaints. On remand, he stated the same complaints he stated in his fitness evaluation. And the judge, at that point, there was possible neglect. There was possible findings of what happened. And the court needed to ask more questions. And it needed to not just dismiss this as attorney strategy when it's not attorney strategy. So, again, we have the same problem we had the first time this case was on appeal, is that the judge stopped its inquiry too soon. It didn't do enough to flush out a record so that these questions So we're not just speculating. We're not relying on guesses and presumptions. But we know what the attorney said. We know what her thought process was and what the offers were and what her recollection of her conversation with the defendant was. None of that is on the record. And so, at a minimum here, this case, again, needs to be sent for another crack inquiry. Are there any further questions? The fact that the trial court relied on attorney strategy, I mean, we review this de novo, do we not? Yes. I mean, that didn't have any effect on what you put in that original brief, though? Again, I think the important point was what the prosecutor said. We never are disputing the accuracy of what the state said. Again, I apologize to the court. I did not see that as a glaring omission. It is a glaring omission. It's directly relevant to your claim that there's nothing in the record to refute the claims regarding the negotiations. And specifically, you talked earlier about on remand, the trial court asked the defendant again, after he repeated his allegations in the fitness valuation, if I understand it correctly, it was the way she was negotiating your case and conveying the results of the negotiations to you. The defendant says, yeah. And the court says, okay, all right. And then he turns to Ms. Ash and asks the questions about pretrial negotiations, correct? Yes. And you are suggesting that the trial court's knowledge, which includes the fact that the trial court participated in two 402 conferences with the lawyers, so not only does the judge have knowledge of on-the-record negotiations, the trial court is aware of what was taking place between counsel and the state, and the court talked the state into reducing it from five years to four years. Can the trial court, in reviewing a crankle claim or ineffective assistance claim, can he rely upon what he recalls from those 402 conferences? Absolutely. The judge said nothing about that. Well, the judge talked about the negotiations that had taken place and then asked Ms. Hatch if she had conveyed those offers to the defendant. She said, yes, she had. He did, but, again, looking at the trial judge's reasoning, he didn't make a factual credibility determination in this case. He didn't say, I remember this and this was said. But even if he had, he wasn't present for the conversations between defendant and defense counsel, and that is the crux of the matter in this case. Now, in our brief, we included the facts of the 402 conferences. We included the fact of what the prosecutor told the court. We included the complete exchange in both crankle inquiries. We included the judge's complete findings after the crankle inquiry. If this is such a glaring omission, why did the state not bring this up in its brief originally? Rule 341 requires a fair and accurate presentation. I believe this is a fair and accurate presentation. I stand by what I wrote in the brief, and I apologize for not including that fact, but, again, I believe that the most relevant, the most telling fact was the facts stated by the prosecutor. And we never, at least to the best of my knowledge, never indicated that the defendant overtly was challenging that presentation. You said in your brief there was nothing in the record to refute his claims. And, again, I stand by that. I stand by that because of the fact of the offer on the date of the arraignment, the fact that we don't know what was said between the defendant and defense counsel, and the fact that, again, this could be referring to four years at 50 percent. You've indicated that the second crankle hearing was insufficient. Could you give this Court some suggestions as to what questions and answers might have been obtained in order to make this a sufficient hearing? Yes. The Court just needed to ask a handful of questions, such as, to defense counsel, such as did Mr. Morgan say he was accepting the offer? Did you convey that acceptance to the State? Did you tell him he could get probation? Did you believe probation was an accurate sentence? Did you tell him the deadlines for the State's offer? Again, questions along those lines would have flushed out. What about something as simple as what did you tell your client? Absolutely. That's probably the best question that could have been asked. Well, we know from the record that Ms. Hatch was hopeful that the defendant would take the offers because she said so on the record when the case was continued for the defendant to consider the offer, correct? I don't recall that. Well, I recall it from the record. The case was continued so the defendant could consider the State's offer, wanted to call his mother. I remember that. I don't remember Ms. Hatch saying that she was recommending taking the offer or advising the client to do that. It's in the record. I have questions. Any other questions at all? Thank you. You have an opportunity to make it up. Mr. Bernhardt, you may proceed. Thank you, Your Honor. I just want to point out the first thing is I didn't do the first Morgan Long case. I haven't went that brief. So I can't really comment on what happened in that particular case. I can tell you in this case that on remand I think that was, considering the record, a sufficient inquiry, given that he did ask specific questions of the defendant. The defendant said, well, I was told I was going to be given two years, but defense counsel told me we should shoot for probation. But then he also admitted that he knew he couldn't get probation. And, you know, we can't ignore the fact that these were experienced attorneys. This was a Class II felony. It was 3 to 14. He couldn't get probation. We can't leave that knowledge, you know. It wasn't specifically in the record, but certainly the fact that the trial court again was ---- That would go to ineffective assistance, would it not? I mean, if the defense attorney had said to the defendant, I will shoot for probation, I mean, everything in the record shows that this guy wasn't going to get probation. There was never an offer of probation. It was a nonprobationable offense. So if, in fact, the defense attorney was asked by the judge, did you tell him you were going to try and get probation, and the attorney says, yeah, I told him that because I was going to try and get probation, wouldn't that necessarily go to ineffective assistance? I think it would, certainly. Well, how would it be ineffective assistance to tell a client, I'm going to try to get probation? Well, the fact is you can lower the federal class, too. You can always do that. Yeah, that's correct. So that's not ineffective. I mean, that's the goal, to get the best offer. Right, and you can lower the crime. On February 4th, in open court, and this is the last time in rebuttal, but on February 4th, 2015, the assistant state's attorney informs the court that we had previously had a 402 conference. We're still trying to resolve the case, and Ms. Hatch says, that is correct, Judge, and they put the case on the call for the 17th. Correct? Correct. Now, we know at that time that the offer was higher than four years because on the 17th there's another 402 conference, and the result is the state has knocked the offer down now to four years at 50%. At 50%, correct. Correct? Correct. And then it's discussed on the record the defendant rejects that offer that same day. Correct. Correct. Is there any, even a hint in any of these on-the-record conversations with the defendant that he ever piped up and said, oh, I was hoping for probation? No. In fact, after he rejected the four-year offer, then he went to his attorney and said, well, maybe we can negotiate. His attorney called the assistant, and the assistant said, okay, five years, and he rejected that. So, in fact, it's the opposite. He never said, well, where, you know, I thought I was going to get two years. There's nothing on the record that concerns that particular comment. He was certainly given plenty of not time, but the judge asked him questions. Is this tracking, you know, true? Before trial, when the assistant state's attorney went through the litany of three, four, and five years, he asked defense counsel, is that correct? She affirmed that. When he asked the defendant, the defendant said, yes, that's correct. I don't think we need any more than that. The defense, that now we're looking at a fact that defense or defendant is not being truthful. And I think the record shows that also. You know, the attorney. If he's relating to things off the record, how the record would show that he's lying? Well, the fact is, is he said he thought he was going to get two years, you know, that there was an offer of two years. There's nothing in the record that speaks to that two years. When he had a chance to speak up, he never states anything to the trial court. You know, I don't think he was in the 402 conference. It's not clear in the record. But the fact, this is somewhere down there. Why didn't he, you know, if the defense counsel told him, conveyed an offer of two years, why isn't that stated anywhere by the assistant state's attorney? When he stated before trial, I want to make this perfectly clear. We started out with a three-year offer. He rejected it. Then we, you know, we went to five. Well, before trial, he says, you know, we went to four years at 50%. And then finally when he rejected that and came back, he said, okay, five years. And he rejected that. There's nothing in the record that speaks to that. You're saying that based upon what the record says, what he said off the record was a lie or at least untrue. That's what I'm stating. Correct. In People v. Hale, the Illinois Supreme Court said, quote, a showing of prejudice must encompass more than the defendant's own subjective self-serving testimony. Now, in this case, what potential prejudice could the defendant show? I don't know that. Could there be any relief ordered when the state revokes the four-year offer? No, the only thing I could think of is if the trial was, in doing the trial, but there wasn't. Doesn't the U.S. Supreme Court in Lafler discuss this very issue, and that is where a defendant denies or rejects a plea offer, it goes to trial, it has a fair trial. What is the possible remedy? And if the defendant was sentenced for the offense for which he would have pled pursuant to the rejected offer, the remedy is a new sentencing hearing where the trial judge would consider whether or not he would have accepted that offer and then consider whether or not the trial judge would give him that sentence. Yeah, and I can't speak to that because I don't remember reading the case with the specifics. I just can't comment on it. Lafler presupposes the notion that the defendant was deprived of an opportunity to accept the offer. Was the defendant deprived of an opportunity to accept the four-year offer? Absolutely not. He was given three or four chances at least in open court and four or two appearances. I think defense counsel would, I wouldn't say be on her duty, certainly, but she gave him good counsel. She said, I hope he accepts this offer. For whatever reason, he did. I don't know, talking to his mother or for whatever reason, he thought he could get something less. She didn't do a good job if, in fact, what he said was true. And, again, that's presupposing what he says is true, and that is that behind closed doors, she said, don't take the four, even though you ought to take it, four and 50%, because I'm going to shoot for probation. That's just bad. That's bad advice. Correct. I think that goes to credibility. This is an experienced attorney. I don't think she would be risking her reputation and her license. I guess that's the issue then. Why? Does a trial judge, when Justice Paquette asks this question about the, you know, do we presume that an attorney is effective? Do we presume that an attorney is competent? In the face of the defendant making a specific statement that something was set off the record, does that assumption or presumption rebut that? I think it does. I think because we've seen, and there's more than me, the fact that this happens many times where after the defendant rejects certain offers, and then has a trial and gets more years, now he's feeling like he or she made the wrong decision. And I think Krenkel does that, too, because we just have to show, you know, that there's a sufficient or adequate inquiry into it. I think we take that presumption and say, you know, I think as attorneys we're held as a higher standard. As a defendant, you have certain interests. Your interest is the least amount. You know, the attorney's interest is, you know, make sure that justice is done and to represent the defendant zealously, but within the rules, you know, that we have. So I don't think there is – I think there is a presumption there in Krenkel that. Let's assume that the attorney made comments to the defendant, let's hold off for probation, let's shoot for probation. Assume that's true. In the face of that, in the face of the admonishments where the court says and gives the defendant the options, it's either you take this four years or you're going to go to trial and then you'll face three to 14, and the state says, I am withdrawing all offers, there will be no more offers. Can't – could a defendant in that situation possibly rely upon this pipe dream of probation or an offer of two years? I don't think so, Your Honor. Would that make any sense whatsoever to interpret the plea negotiation process that way? No, not – and the record shows that. I can't see how that's possible. Given, you know, given all of – the fact that, you know, it's a three to 14-year sentence, the fact that they went through this three or four different times, these negotiations, absurd defense counsel, even if initially she said, I'm going to try to get probation or something like that, she would have to come back and say, no, the state's not giving us anything. This three years is it. That would make sense to, I think, all of us in the courtroom. Do you think that the judge's interrogation of the defense counsel was stellar? Well, I don't know if it was stellar. I guess sometimes in these situations, it seems like the trial court doesn't want to delve into the, you know, attorney-client privilege too much. I've read some other records where, you know, is this correct? Certainly that recitation, she affirmed that she conveyed every offer. You said, is this correct? I think you just said, is this correct? That question wasn't asked by the judge. No, he asked, were these offers conveyed to defendant? And she affirmed that. She said, yes. Okay. You know, in Burr v. Tidwell and in Laffler, the Supreme Court said the state can protect itself, or worse to that effect, by making a record, making a record of what negotiations were. And the state did exactly that in this case, correct? Correct. Yes. Yes, Your Honor. You said you weren't involved in the original briefing of this case. No. And in this case, you did not argue that the first decision Morgan won was palpably erroneous, did you? No, I wouldn't do that, Your Honor, because I wouldn't second guess you. But I felt that, you know, with what the assistant said, that that was a powerful argument that I think I may have, I'm sure I would have made in the first appeal, but I can't argue what other people have done. If there are any other questions, Your Honor? No. Thank you. Thank you. Mr. McCoy, you may proceed. The key point here is that this, Mr. Morgan's claim is based on off-the-record conversations between himself and defense counsel. And, yes, the state made the proffer, pre-trial, defense counsel and the defendant did not dispute that proffer, but we don't know what defense counsel told the defendant before that. We don't know what conversations. Do we even know when it was said? When? Within a certain time frame? Yes. And the fact is, it's circular reasoning. Was that before or after the four years 50%? Was the proffer made? It was made on the day of trial. When he alleged that she said that she was going to go for probation, was that before or after the four years? After. And he really presumed that trial counsel, everything she told the defendant was accurate and effective, is presuming too much, else there's no reason to even hold a criminal inquiry to begin with. All it took was what the judge did here of just saying, asking very perfunctory questions, and then presuming the counsel is effective. Again, that would just strip Krankel of all its teeth. It would not work to get any kind of factual basis, which is its purpose, is to create a record on which these issues can be litigated. Again, what is the possible prejudice? When the offer that you keep talking about this four years was rejected that same day on the record by the defendant with full knowledge of the consequences, how can we possibly say that he turned that offer down based upon some speculative conversation when he's confronted and given the option of taking the four years on the record by the trial court in the face of the state's statement, we're taking all offers off the table? Which wasn't true. The state offered another offer the next day. So it's always possible for parties to reoffer. Mr. McCoy, please, that's always possible. But what the state's – I'm talking about when the defendant rejected that offer. And what the Illinois Supreme Court said in People v. Hale, a showing of prejudice must encompass more than the defendant's own subjective self-serving testimony. But we haven't got to the point of prejudice yet. If this goes back and a new attorney is appointed, you have a full evidentiary hearing at that point, then the defendant's got to prove strickland, got to prove prejudice. The United States Supreme Court said that the state can protect itself against later claims of ineffective assistance by making a record of the negotiations. The state made a record of the negotiations in this case. Correct. And the defendant confirmed those were the negotiations. And those could be the negotiations, and Mr. Morgan's claims could still be true. Mr. Morgan's claims are, again, based on what happened between him and the defense counsel, which is an off-the-record conversation, which is why – which the judge was not present for, which the state was not present for, which is why a crank of inquiry was needed, why this case was remanded in the first place so that the judge could conduct a factual inquiry, could question defense counsel about what she said to the defendant, what the defendant said to her, what the defendant's understanding was. At the time, he rejected that plea. Obviously, in a Waffler-type case, where the defendant eventually goes to trial, obviously the plea is always going to be – or the plea offer is always going to be revoked. That doesn't mean you can never have prejudice. Well, you're talking about a situation where the offer was not conveyed or another situation where a defense attorney received the offer but because the attorney did not convey the offer in a timely fashion, the offer was withdrawn. Those are the two situations in Frye and Waffler. That's not the situation here. The offer was conveyed to the defendant on the record. He rejected it on the record with full knowledge of the consequences. Well, how can what takes place outside the record rebut what takes place on the record when what takes place on the record is after that supposed conversation that you're referring to? We don't know. It's speculation. We don't know what the defendant said. What's going through his mind isn't just what the judge said. It's what counsel said as well. Did counsel tell him the possibilities? Did counsel say, reject this now and we'll get probation later? I guarantee you we'll get probation. That's an effective assistance. There's different ways besides just what was present in Frye and Waffler. An attorney can be ineffective during plea negotiations, and the fact that the defendant rejected the offer, the fact that he knew what that offer was, doesn't mean everything he was told to make him reach that decision was effective. The reason we have an attorney, the reason we give the right to counsel, is for advice, is to help the client, especially a client like this who has a very low IQ, navigate the legal waters. And, of course, what defense counsel says is going to be important to the defendant, and, of course, he's going to be relying on that when he comes to court and when he speaks to the judge. Any other questions? Do we have any other questions? Thank you. We'll take the case under advisement. There are some other cases on the call. We'll give you a short recess.